ROGER BROWN, Respondent, *v.* McGRAW-HILL BOOK COMPANY, INC., Appellant.

First Department, April 28, 1966.

318

*George P. Lane* of counsel (*John F. Haggerty* with him on the brief; *Hurley, Kearney & Lane,* attorneys), for appellant.

*Jesse Moss* of counsel (*Richard Allan* with him on the brief), for respondent.

STEUER, J.  Defendant appeals from a judgment in the sum of $29,853.32 awarded to plaintiff after a trial before the court without a jury.

The defendant contracted with Robert Ruark to publish his book entitled "Uhuru." As a part of the enterprise, though by an entirely independent contract, defendant contracted with plaintiff to do publicity work to promote the sale of the book. This was a new venture for both parties. Plaintiff, though experienced in public relations work, had never done such work in connection with a book, and defendant had never hired anyone to do such work. Plaintiff drew the contract, which was finally executed after several conferences in which many of the terms of the initial draft were changed.

The contract provides that plaintiff is to receive $5,000 for his work. In addition, he is to receive 5% of the net proceeds or 18 cents per book, whichever is greater, on all copies sold by defendant in excess of 75,000 copies. The testimony shows that the 18 cent figure was arrived at by an estimate of 5% of the sales price per book less defendant's production cost and the author's royalty. The contract also provides that the plaintiff is to

receive " a minimum of five per cent (5%) of the net proceeds of all bulk sales of the book."

Concededly, the defendant sold some 55,000 copies of the book. But in addition it entered into two other transactions in regard to it. It sold the right to publish a paperback edition to Fawcett Publications, Inc. in return for a royalty of 15% of the retail selling price per copy or 14¼ cents per copy. Defendant also sold Book Club rights to the Book-of-the-Month Club for a royalty of 10% of the sales price per book or 52½ cents per copy. In regard to both these transactions, defendant's contract with the author Ruark provided that he was to receive half of the proceeds. Ruark's regular royalty on books sold by defendant was 15% of the sales price.

Plaintiff makes no claim with regard to the paperback edition. He does claim 18 cents per copy on the sales made by the Book Club. The Book-of-the-Month Club sales amounted to 162,600 copies. Plaintiff therefore claims on 142,600 copies (the total of defendant's sales and the Book Club sales less 75,000). We do not believe that a recovery on this basis is justified by the agreement of the parties.

Plaintiff's contention is that the Book Club transaction represents sales by the defendant through the medium of an agent. This is entirely negatived by the agreement between the defendant and the Book-of-the-Month-Club. By this agreement the latter was given the exclusive privilege of getting out an edition of the book using its own materials and manufacturing processes. It rented the plates from defendant for a specified rental. Its sales were to its own members. Defendant had nothing to do with either the production or the sale of these copies. These are not therefore " copies sold by McGraw-Hill " in the words of the contract.

Furthermore, the weakness of plaintiff's position is emphasized by two factual considerations. The first is that the only distinction between defendant's transactions with the Book Club and with the paperback edition is one of degree. In both, the other party was to manufacture and sell, using its own materials and supplying its own labor. There is nothing in the wording of the contract between plaintiff and defendant which distinguishes the transactions and, if plaintiff would be entitled to a commission on books sold pursuant to one of the agreements, he would be equally entitled to compensation as regards the other. If the paperback copies are considered, the result would be a loss to defendant of between 10 cents and 11 cents a copy for each book sold. The mere fact that plaintiff has not claimed for this edition does not affect this. The point is that the claim he

does make rests on no firmer ground than this one, and the contract is to be tested in that light. While it is true that people have made improvident agreements and that even an obvious disadvantage to one of the parties does not affect the validity of the contract, yet, in determining what the construction of the agreement should be, this is a factor. It is not to be assumed that people act unreasonably to their own disadvantage, and an interpretation which assumes that they so acted is not favored (*Campbell* v. *State of New York,* 240 App. Div. 304). " Contractual obligations are fixed solely by the parties, and the language of a business contract must be construed in the light of what a business man would reasonably expect to give or receive, to perform or suffer, under its terms " (*Shirai* v. *Blum,* 239 N. Y. 172, 179). " In the transactions of business life, sanity of end and aim is at least a presumption, albeit subject to be rebutted " (*Outlet Embroidery Co.* v. *Derwent Mills,* 254 N. Y. 179, 183). This is not an instance where the defendant miscalculated on the basis of unknown or unexpected contingencies. If plaintiff's contention represents the true import of the contract, defendant entered into it knowing that it would be turning over nearly 70% of its return on the Book Club contract to plaintiff and could be liable to a loss on the paperback edition the extent of which would be measured by the success of the enterprise. That is not " sanity of end and aim. "

Lastly, plaintiff is not equitably entitled to any compensation for the Book Club sales. He makes no claim that any service of his either procured the contract or enhanced the sales made by the Book Club. As was established, these sales are made to the Book Club membership and the Book Club itself advises its members of the books available and their nature. Plaintiff does claim that the advance payment of $5,000 being all that he received does not compensate him for the work he did and for the expenses he incurred. This may well be true. But this represents either a failure of plaintiff's expectations or his efforts. It was proved that without the services of plaintiff or any publicity expert, the publisher sold 125,000 copies of Ruark's previous book. Had this one done as well, plaintiff would have been amply compensated.

The judgment should be reversed, on the law and the facts, and judgment entered for defendant dismissing the complaint, with costs and disbursements to appellant.

STEVENS, J. (dissenting). I dissent and vote to affirm. As pointed out in the majority opinion, this contract represented a novel experience for both parties. It was unusual for the defendant to engage an outside publicist, and it had no form of

contract for that purpose. Nor had plaintiff theretofore been engaged to publicize a book. The contract between the parties in reality represents a joint effort (though prepared by plaintiff) and is the result of several prior discussions. This was the plaintiff's first book account. Apparently not being versed in the language of the trade, for example, '' bulk sales '', plaintiff, of necessity, relied upon defendant for an insertion dealing therewith.

The provisions for total payment of $12,000 to plaintiff, and '' five per cent (5%) of the net proceeds, or 18 cents per book, whichever is greater '' on copies of sales above $100,000, as later reduced to $5,000 and 75,000 copies respectively, also reflect somewhat the parties' discussions.

The simple question here involved is whether the contract arrangement with Book-of-the-Month-Club can be properly characterized as '' sales '' by defendant within the meaning of the parties' contract.

Under the contract between defendant and Fawcett Publications, Inc. (Fawcett) defendant sold to Fawcett the right to publish the book, with a right also to change the title, or publish the work in abridged form, with defendant's consent, which consent was not to be unreasonably withheld. Under the terms of defendant's contract with the Book-of-the-Month Club, Inc. (Club) the Club acquired the book club rights together with one or two sets of plates from which the book is published and sold. There was a guarantee against a unit royalty, and there is no dispute that defendant received a royalty for each book sold by the Club, nor that the Club book carried the defendant's name.

Defendant's officer who executed the contract on its behalf, and who was responsible for the changes from $12,000 to $5,000, and the sales reduction figure from 100,000 to 75,000, testified that defendant estimated the sales in the trade edition, i.e., the direct sales, would be approximately 60,000. Defendant was aware the $12,000 originally submitted by plaintiff included plaintiff's contemplated expenses. Under the defendant's version the provision for compensation to plaintiff on sales above 75,000 would be meaningless. Plaintiff's total compensation, excluding possible bulk sales, would be $5,000.

The term '' sales '' would naturally be construed by plaintiff to include all sales in which the book was advertised as a publication of the defendant. If defendant intended a contrary interpretation or contemplated a restriction, since it had experience in the publishing field, it at least had a duty to make this known to plaintiff. This it failed to do and the words should be given

their ordinary meaning. Nor should it be assumed that plaintiff would knowingly enter a contract in which his total compensation would be less than one half his estimated expenses.

McNALLY, J. P., and EAGER, J., concur with STEUER, J., STEVENS, J., dissents in opinion.

Judgment reversed, on the law and on the facts, with $50 costs and disbursements to the appellant, and judgment rendered in favor of the defendant dismissing the complaint.